ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| UNIVERSIDAD DE PUERTO RICO representada por su Presidente LUIS A. FERRAO DELGADO y el RECINTO UNIVERSITARIO DE MAYAGÜEZ, representada por el Rector AGUSTÍN RULLÁN TORO<br><br>Parte Apelada<br><br>v.<br><br>FEDERACIÓN LABORISTA DE EMPLEADOS UNIVERSITARIOS DEL RECINTO UNIVERSITARIO DE MAYAGÜEZ representado en este acto por su Presidente DANIEL ECHEVARRÍA, FULANO DE TAL, SUTANO DE TAL<br><br>Parte Apelante | KLAN202301123 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.: MZ2023CV01404<br><br>Sobre: Injunction |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de octubre de 2024.

Comparece la Federación Laborista de Empleados Universitarios del Recinto de Mayagüez (en adelante, FLEURUM o parte apelante) y solicita que revisemos la Sentencia emitida el 6 de noviembre de 2023, y notificada el 14 de noviembre de 2023, por el Tribunal de Primera Instancia (en adelante, TPI), Sala Superior de Mayagüez. Mediante el referido dictamen, el foro apelado declaró con lugar el *injunction* permanente radicado por la Universidad de Puerto Rico y el Recinto de Mayagüez (en conjunto, UPR-RUM). En consecuencia, le ordenó a la FLEURUM cesar y desistir de obstruir el libre tránsito y/o acceso vehicular o de personas a cualquiera de

los predios, instalaciones, edificios o facilidades del Recinto Universitario de Mayagüez (en adelante, RUM).

Por los fundamentos que se exponen a continuación, se confirma la sentencia apelada.

**I.**

El 14 de agosto de 2023, la UPR-RUM instó una demanda en contra de la FLEURUM sobre entredicho provisional, e *injunction* preliminar y permanente. Alegó que durante los días 2, 10 y 14 de agosto de 2023, la FLEURUM organizó unas manifestaciones durante las cuales bloquearon los portones del RUM impidiendo a los estudiantes, empleados y profesores el acceso al recinto el primer día de clases del semestre agosto-diciembre de 2023. Arguyó que dicha acción concertada de la FLEURUM tenía la intención específica de paralizar todas las funciones académicas y administrativas del RUM, lo cual constituía un acto ilegal no protegido por el derecho constitucional de libertad de expresión y/o asociación, toda vez que la organización no tenía el derecho a obstaculizar las funciones de trabajo y enseñanza de los estudiantes y empleados docentes y no docentes del recinto universitario. A su vez, la UPR-RUM señaló que la acción de la FLEURUM es de carácter recurrente, que le causa un daño real e irreversible y que no existe otro remedio en ley para proteger los derechos de la comunidad universitaria que representa. Ante ello, solicitó al TPI como remedio que:

1. Dictara orden de entredicho provisional al amparo de la Regla 57.1 de Procedimiento Civil ordenando a la parte demandada cesar y desistir de bloquear y cerrar los portones e impedir el libre acceso a las facilidades de la UPR-RUM.

2. Dictara Sentencia de remedio interdictal al amparo del Artículo 277 de la Ley de Estorbo Público de Puerto Rico, 32 LPRA sec. 2761, declarando estorbo todo vehículo, valla u objeto colocado en los portones y acceso a la UPR-RUM y ordenando su remoción inmediata.

3. Expidiera orden de interdicto preliminar instruyendo a la parte demandada cesar y desistir de las actuaciones

que estaban causando daño irreparable a la UPR-RUM, sus empleados, estudiantes, contratistas y la comunidad en general, evitando así que los demandados continúen impidiendo la entrada y salida al Recinto, prohibiendo la realización de cualquier otra actividad que bloquee los accesos al RUM y obstruya las labores académicas y de cualquier otra naturaleza.

4. Ordenara la celebración de una vista sobre interdicto permanente ya que las acciones concertadas de la FLEURUM son repetidas y continuamente paralizan las funciones de la universidad causando daños irreparables.[1]

El 15 de agosto de 2023, el TPI emitió la orden de entredicho provisional, mediante la cual ordenó a la FLEURUM cesar y desistir inmediatamente de continuar bloqueando y cerrando los portones del RUM e impidiendo el libre acceso a las facilidades del recinto. Asimismo, decretó que la FLEURUM debía remover cualquier vehículo u objeto que estuviera impidiendo o interfiriendo el libre acceso a la institución de manera inmediata. De igual forma, durante la vigencia de la orden de entredicho provisional, la FLEURUM debía abstenerse de llevar a cabo cualquier acto que tuviera el efecto de bloquear, impedir o interferir con cualquiera de los portones y accesos al RUM. El TPI señaló la vista de *injunction* para el 25 de agosto de 2023.

A la vista de *injunction*[2] compareció la Universidad de Puerto Rico (en adelante, UPR), el RUM y la FLEURUM mediante sus respectivas representaciones legales. Antes del desfile de prueba, la FLEURUM, sin someterse a la jurisdicción del tribunal, solicitó la desestimación de la demanda basado en los siguientes fundamentos: (1) falta de jurisdicción sobre la persona, tras alegar que no se le emplazó conforme a derecho y (2) falta de jurisdicción por la prohibición de los tribunales de emitir *injunctions* conforme a la Ley Núm. 50 de 4 de agosto de 1947, según enmendada, conocida como

---

[1] Véase, *Demanda de entredicho provisional, injunction preliminar y permanente.* Apéndice del recurso, págs. 1-15.
[2] El TPI consolidó la vista de *injunction* preliminar con el *injunction* permanente. Véase, *Minuta.* Apéndice del recurso, págs. 43-45.

*Ley para Limitar la Facultad de los Tribunales para Expedir Injunctions en Casos de Disputas Obreras* (en adelante, Ley Núm. 50).

Luego de escuchar las argumentaciones de las partes y evaluar los documentos ante su consideración, el 8 de septiembre de 2023, el TPI notificó una *Resolución y Orden.* En cuanto al planteamiento de falta de jurisdicción sobre la persona del FLEURUM, concluyó que ésta fue debidamente emplazada a través de la persona que consta en los registros del Departamento de Estado como su vicepresidente, Sr. Heriberto Justiniano. Por lo cual, el TPI resolvió que adquirió jurisdicción sobre la persona del FLEURUM al haber sido emplazada conforme a derecho.

En cuanto a la alegación de que la Ley Núm. 50 impide la expedición de un interdicto, el TPI expresó en su *Resolución y Orden* lo siguiente:

> Por otro lado, de las alegaciones presentadas en la demanda, no surge que en el presente caso se fuera a atender ninguna disputa obrera. De hecho, las alegaciones presentadas que dieron base a la emisión del entredicho provisional se desprende que el asunto planteado ante nuestra consideración es un asunto de acceso a las facilidades del Recinto Universitario de Mayagüez (en adelante RUM) y van dirigidas exclusivamente a que se cerraron todos los accesos al RUM, impidiendo el acceso a profesores, estudiantes, contratistas y demás personal; lo que afectó el sistema público de enseñanza en dicho recinto.
>
> Conforme al derecho aplicable no es razonable el análisis de la parte demandada sobre ese particular, ya que este Tribunal al emitir la orden de entredicho provisional, nunca entró; ni entrará, al evaluar los méritos del interdicto preliminar y permanente, en ningún aspecto laboral. Este Tribunal ha limitado sus órdenes y limitará el asunto a lo alegado en la demanda en cuanto al cierre de las facilidades del RUM. Por lo antes expuesto no le es de aplicación la Ley 50.[3]

A tenor con lo anterior, el TPI asumió jurisdicción sobre la materia para atender el recurso de *injunction,* en cuanto al acceso a

---

[3] Véase, *Resolución y orden* emitida el 25 de agosto de 2023, y notificada el 8 de septiembre de 2023. Apéndice del recurso, págs. 48-52, a la pág. 52.

las instalaciones del RUM. Por tanto, denegó la solicitud de desestimación incoada por el FLEURUM.

La referida *Resolución y Orden* fue objeto de revisión por este panel del Tribunal de Apelaciones. El 26 de septiembre de 2023, se dictó la correspondiente resolución en el recurso KLCE202301057, mediante la cual se denegó la expedición del recurso de *certiorari* instado.[4]

Del expediente judicial del caso no surge que la FLEURUM hubiera presentado reconvención alguna que incluyera alegaciones enmarcadas en una causa de acción amparada en las disposiciones de la Ley Núm. 50.

El desfile de prueba en la vista de *injunction*[5] comenzó con los siguientes testigos de la parte demandante UPR-RUM: el Dr. Agustín Rullán Toro (Rector del RUM); el Sr. José Martín Caraballo Castillo (Director de la Guardia Universitaria de la UPR-RUM); el Dr. Omar I. Molina Navarro (Decano del RUM); la Tnte. Coronel Janice E. Rodríguez Collado y el presidente de la UPR, Dr. Luis A. Ferrao Delgado. El FLEURUM contrainterrogó a todos los testigos. La prueba documental admitida consistió en:

Exhibit 1    Certificación población estudiantil
Exhibit 2    Certificación 90 [2004-2005]
Exhibit I (estipulado) Comunicado de FLEURUM
Exhibit 3 Informe guardia universitaria 15/agosto/2023
Exhibit 4 Informe guardia universitaria 2/agosto/2023
Exhibit 5 Informe guardia universitaria 10/agosto/2023
Exhibit 4 Informe del 22 de agosto de 2023

La querella de la policía fue ofrecida por la parte demandante, pero no admitida en evidencia.

Posteriormente, en respuesta a la moción instada por la UPR-RUM al respecto, el TPI tomó conocimiento judicial de lo siguiente:

---

[4] Véase, *Resolución* del recurso KLCE202301057. Apéndice del recurso, págs. 79-88.
[5] La vista comenzó el 25 de agosto de 2023 y continuó los días 29 de agosto de 2023 y 26 de septiembre de 2023. Véase, minutas. Apéndice del recurso, págs. 43-45; 53-54; 89-90.

a. Sentencia de 22 de octubre de 2022 por la Hon. Isabel Padilla, del Tribunal Superior de Mayagüez, Caso Núm. MZ2022CV01527

b. Sentencia de 13 de enero de 2023 por el Panel I del Tribunal de Apelaciones Caso Núm. KLAN202200907

c. El 14 de agosto de 2023, WAPA televisión publicó una noticia que titularon "AMANECEN CERRADOS PORTONES DE UPR RUM: Empleados protestan."

d. El Sr. Daniel Echevarría fue entrevistado a través de la plataforma zoom y los visuales que se transmitieron reflejan un grupo de manifestantes de la FLEURUM parados en la vía pública bloqueando la carretera de acceso al RUM en el área que se conoce como la Vita.

e. Durante la entrevista el Sr. Daniel Echevarría declaró que desde temprano en la mañana había unionados en todas las entradas del RUM.

f. Las partes estipularon el contenido y el Tribunal pudo observar el video a través del enlace: https://wapa.tv/noticias/locales/amanecen-cerrados-portones-de-upr-rum-empleados-protestan/article_e7e4c5de-3a91-11ee-b6ef-4173abb54f25.html

En la continuación de la vista del 26 de septiembre de 2023, la FLEURUM solicitó reconsideración de la decisión relacionada con la Ley Núm. 50. El TPI indicó que el término para solicitar reconsideración había vencido y que no iba a variar su resolución sobre la inaplicabilidad de la Ley Núm. 50 a los hechos del caso.

Completado el desfile de prueba de la UPR-RUM, y a solicitud de FLEURUM, el TPI determinó que el testimonio del Tnte. Carlos A. González Rodríguez era uno adverso según la presunción de la Regla 304 (5) de Evidencia, por haber sido anunciado por la UPR-RUM y no haber sido producido durante la vista.

También, antes de comenzar a desfilar su prueba, la FLEURUM presentó una moción de desestimación contra la prueba (*nonsuit*) que brindó la UPR-RUM. El TPI se reservó la determinación y procedió a escuchar los testimonios de los testigos de la parte demandada FLEURUM. Por dicha parte, declaró el Sr. Daniel Echevarría, residente de la colectividad y el Sr. Ricardo Santos Ortiz, asesor sindical. La FLEURUM presentó como testigos de refutación

al Sr. Elmer W. Seda Costa, Sr. Benigno Rodríguez Avilés, Sr. Alexis Moris Rodríguez, Sr. Roberto Valle Santiago, Sr. Charlie Negrón Rivera, Sr. Edgar Matías Pérez, Sra. Carmen Soto Cortés, Sr. Luis Ramos García, Sr. Luis R. Padín Forestier y Sr. Rafael Pérez Torres.

Examinada la prueba documental y la credibilidad que le mereció la prueba testifical ante su consideración, el 14 de noviembre de 2023, el TPI emitió la sentencia apelada. En lo pertinente, el foro primario formuló las siguientes determinaciones de hechos:

1. El Dr. Luis A Ferrao Delgado es el Presidente de la Universidad de Puerto Rico y la persona que conforme al Artículo 5 de la Ley de la Universidad de Puerto Rico, según enmendada, 18 LPRA § 604, tiene la capacidad y el deber de representar oficialmente a la UPR. Es quien autoriza la radicación y juramenta la Petición de Injunction en el caso de epígrafe.

2. El Dr. Agustín Rullán Toro es Rector del Recinto Universitario de Mayagüez desde el 1 de julio de 2019.

3. La FLEURUM, es una organización obrera conforme la Ley de Relaciones del Trabajo de Puerto Rico. El presidente de la organización es el Sr. Daniel Echevarría y su vicepresidente es el Sr. Heriberto Justiniano.

4. Conforme surge de los registros del Departamento de Estado, la FLEURUM está inscrita como "FEDERACIÓN LABORISTA DE EMPLEADOS UNIVERSITARIOS DEL R.U.M. INC." con número de registro 33104, como una corporación doméstica sin fines de lucro organizada el 11 de julio de 1999.

[...]

6. El Sr. José M. Caraballo Castillo es el Director de Tránsito y Vigilancia desde marzo de 2021, y trabaja en el RUM desde el 5 de septiembre de 1996 en los puestos de Oficial de Seguridad I, Oficial de Seguridad II, Oficial de Tránsito, Oficial Administrativo y Director Auxiliar.

7. El RUM tiene 10,655 estudiantes en total y 1,489 empleados entre docentes y no docentes y otros 700 empleados temporeros aproximadamente.

8. La función primordial del RUM es la enseñanza pública para preparar estudiantes como profesionales en las cuatro facultades de Ingeniería, Agricultura, Administración de Empresas, Arte y Ciencias. Ofrecer cursos, laboratorios, investigaciones y actividades extracurriculares, con personal cualificado para ofrecer servicios al pueblo de Puerto Rico.

9. El RUM tiene ocho portones principales: La Vita, Barcelona, Ciencias Marinas (física), Terrace (Finca Alzamora), Miradero (PPF), CID, Biología, Complejo de Ingeniería y otros portones peatonales.

10. El 14 de agosto de 2023, era el primer día de clases del semestre escolar agosto a diciembre de 2023. Ese día, a tempranas horas de la mañana el Rector fue informado por el Sr. José Caraballo, que las entradas principales del RUM estaban bloqueadas por personas y vehículos. No había acceso peatonal ni vehicular.

11. La FLEURUM estaba realizando una manifestación y miembros de dicha organización se pararon bloqueando las entradas y salidas del RUM impidiendo que los estudiantes, profesores y empleados tuvieran libre acceso a la institución.

12. El 14 de agosto de 2023, WAPA televisión publicó una noticia que titularon "AMANECEN CERRADOS PORTONES DE UPR RUM: Empleados protestan."

13. El Sr. Daniel Echevarría fue entrevistado vía zoom y los visuales que se transmitieron reflejan un grupo de manifestantes de la FLEURUM vestidos con camisas verdes y portando cartelones con distintos mensajes bloqueando las vías de acceso en la entrada principal del RUM conocida como la Vita.

14. Durante la entrevista, el Sr. Daniel Echevarría declaró que desde temprano en la mañana había unionados en todas las entradas del RUM.

15. Como consecuencia de dicha manifestación el 14 de agosto de 2023, no se pudieron llevar a cabo clases ni otras actividades dentro de las facilidades del RUM. Se afectaron las clases, los trabajos administrativos, investigaciones y los trabajos de los contratistas en los proyectos que están en curso dentro del RUM.

16. El 2 y 10 de agosto de 2023, la FLEURUM realizó manifestaciones bloqueando el acceso a través de los portones del Departamento de Edificios y Terrenos.

[…]

18. El Sr. Caraballo, declaró y el Tribunal le concedió entera credibilidad, que el 14 de agosto de 2023 no hubo tareas administrativas ni académicas ya que todos los portones del RUM amanecieron bloqueados por manifestantes, los cuales identificó como miembros de la FLEURUM, porque estaban vestidos con camisas de la FLEURUM o con el uniforme de los talleres; o porque conoce que forman parte de dicha organización.

[…]

20. El Sr. Caraballo llegó al RUM a eso de las 6:45 a.m. y encontró el portón de la Finca Alzamora bloqueado por tres manifestantes de la FLEURUM, y al dialogar con el empleado Rubén Muñiz, le permitieron pasar.

Entonces, se dirigió a cada uno de los portones principales del RUM. Todos estaban bloqueados por manifestantes de la FLEURUM y no estaban permitiendo acceso al interior de la institución. En cada portón dialogó con un miembro de la FLEURUM. En el portón de la Carretera 108 el Director Caraballo habló con el Sr. Edgar Matías. En el portón de física se entrevistó con el Sr. Charlie Negrón. En el portón de Barcelona donde había manifestantes sentados en sillas en el lado del portón de entrada y manifestantes parados bloqueando el portón de salida y el portón peatonal se entrevistó con el Sr. Gilberto Talbot. Luego fue al portón principal de la Vita donde habían más de 50 personas bloqueando el paso y se entrevistó con el Sr. Luis Padín y éste le indicó que por instrucciones del Sr. Daniel Echevarría nadie entraba porque estaban en paro. El Director Caraballo pudo observar que no permitían la entrada a estudiantes caminando ni en vehículos. El testigo declaró además que había problemas de tráfico en la Carretera 108 por motivo de que los portones estaban bloqueados. La carta de 15 de agosto de 2023, suscrita por José M. Caraballo Castillo y el Informe de la Guardia Universitaria del Teniente Roberto Vargas Muñiz, marcado como Exhibit 3 de la parte demandante, confirman el testimonio vertido por éste durante la vista.

21. El Director de Tránsito y Vigilancia declaró que luego de visitar cada portón dentro del RUM, llegó hasta el Cuartel de la Policía de Puerto Rico, y habló con el retén Sgto. Medina, donde presentó la querella 20230505008787, con el propósito de notificar que los manifestantes estaban bloqueando la entrada a una institución pública, pero la policía estatal no hizo nada con relación al bloqueo. Aunque llegaron oficiales de la Policía de Puerto Rico a las inmediaciones del RUM, éstos no intervinieron con los manifestantes.

22. El Director Caraballo identificó e hizo referencia a un Informe preparado por éste sobre una manifestación de la FLEURUM realizada el 2 de agosto de 2023, donde bloquearon con pancartas y con unionados los portones de acceso al Departamento de Edificios y Terrenos. Dicho Informe fue admitido en evidencia como Exhibit 4. Durante su testimonio el Director Caraballo hizo constar que se presentó al lugar y dialogó con el Sr. Daniel Echevarría y el Sr. Edgar Matías, líderes de la FLEURUM, solicitando acceso a las personas que vinieran a realizar gestiones en el Departamento de Edificios y Terrenos, pero el Sr. Daniel Echevarría le indicó que la protesta continuaba y no permitiría lo solicitado.

23. Igualmente, el testigo Caraballo declaró e hizo referencia a un Informe preparado por este dirigido al Decano de Administración, sobre una manifestación de la FLEURUM realizada el 10 de agosto de 2023, donde manifestantes unionados bloquearon los portones de acceso al Departamento de Edificios y Terrenos.

24. El Director Caraballo declaró sobre las instancias donde ha tenido que atender situaciones de bloqueo o de acceso por parte de la FLEURUM en el pasado. Dichas instancias fueron enumeradas en el Exhibit 6 de la parte demandante. Este Tribunal le brinda credibilidad a dicho testimonio ya que en la Sentencia dictada el 22 de octubre de 2022, por la Hon. Juez Isabel Padilla, del Tribunal Superior de Mayagüez, Caso Núm. MZ2022CV01527, surge que "ocurrieron manifestaciones de la FLE[U]RUM el 25 de marzo de 2022, 15 de agosto de 2022 (primer día de clases), 16 de agosto de 2022, 15 de septiembre de 2022 y 13 de octubre de 2022. En estas manifestaciones se cerraron los accesos a la Universidad de forma parcial o total, afectando la labor y la actividad académica y docente de los estudiantes, además de los programas de apoyo a los mismos."

25. No hay duda de que las actuaciones de la FLEURUM de impedir el libre acceso a las facilidades del RUM mediante bloqueo de los accesos ha sido de carácter repetitivo.

26. El Presidente de la Universidad Luis A. Ferrao, declaró que el primer día de clases es un día de grandes expectativas, los estudiantes de nuevo ingreso vienen en ocasiones acompañados por sus padres y el bloqueo de los accesos crean una muy mala imagen para la universidad. A pesar de las campañas que realiza la Universidad para atraer admisiones, estas situaciones en que se impide el acceso tienen un efecto negativo en la matrícula de estudiantes.

27. Igualmente, el RUM sufre daños inminentes e irreparables al verse privado de acceso al campus universitario sin poder cumplir con su misión de enseñar ni realizar sus funciones académicas, administrativas y de servicio a la comunidad. También sufren daños por las reclamaciones presentadas por los contratistas que realizan obras en el recinto y se ven impedidos de trabajar motivo de la falta de acceso.

[…]

29. No se recibió prueba alguna sobre incidentes violentos o altercados durante la manifestación.

30. La parte demandada presentó como prueba testifical la declaración del Presidente de la FLEURUM y su Asesor Sindical Ricardo Santos, quien no tenía conocimiento personal de los hechos ocurridos el 14 de agosto de 2023 y admitió no haber estado presente en la manifestación.

31. El testimonio brindado por el Sr. Daniel Echevarría, así como algunos testigos de refutación, no mereció credibilidad a este Tribunal, al negar de forma absoluta y categórica que el personal de la FLEURUM hubiera entorpecido el acceso a las facilidades, incluso sosteniendo que el acceso al RUM durante su

manifestación del 14 de agosto de 2023 era de carácter libre y no estaba restringido de ninguna manera.

32. Varios testigos de la FLEURUM admitieron y quedó establecido que cualquier persona que quisiera entrar a las facilidades el 14 de agosto de 2023 debía consultar con los manifestantes para solicitar su autorización. De haberse permitido el acceso durante el tiempo en que se bloquearon las entradas, se trató de casos aislados que no representan para este tribunal el flujo normal de estudiantes y empleados de la institución.

33. Las actuaciones de la parte demandada interrumpieron y paralizaron el acceso al RUM el 14 de agosto de 2023 y al Departamento de Edificios y Terrenos el 2 y 10 de agosto de 2023.

34. La parte demandante tiene el legítimo derecho de mantener la universidad abierta, con libre acceso para cumplir con sus funciones y la misión educativa que le ha sido delegada por ley. La parte demandante no ha reclamado ante este Tribunal otra cosa que no sea el libre acceso a la institución.

35. Quedó establecido para el Tribunal que algunos de los portones de acceso al RUM, incluyendo el portón de acceso al Departamento de Edificios y Terrenos estuvieron abiertos con cadenas que impedían su cierre. Sin embargo, las vías de acceso a través de dichos portones fueron bloqueadas por personal de la FLEURUM, impidiendo el libre tránsito.

36. La FLEURUM realizó un comunicado escrito titulado "Mensaje Urgente al Estudiantado y Comunidad Universitaria" el cual fue admitido como Exhibit 1 por estipulación. La parte demandante presentó el documento e hizo referencia exclusivamente al párrafo final que lee: "Te invitamos a que te unas a nuestra protesta y a las próximas que realizaremos y sea parte de nuestros justos reclamos". No estamos brindando valor probatorio a ese documento ya que ante este tribunal no está planteada controversia alguna sobre los derechos reclamados por la FLEURUM en el mismo.

37. A base del testimonio vertido en Sala, el Tribunal no puede concluir que otras personas más allá de la FLEURUM fueran los causantes de los actos de bloqueo de acceso a las facilidades del RUM.

(Citas y notas al calce omitidas).[6]

A la luz de estas determinaciones de hechos y del derecho aplicable a la controversia planteada, el TPI concluyó que la solicitud de *injunction* no pretendía una restricción o impedimento a los

---

[6] Véase, *Sentencia.* Apéndice del recurso, págs. 91-109, a las págs. 95-100.

miembros de la FLEURUM a su derecho a expresarse libremente, sino que perseguía prohibir el bloqueo de los portones del RUM, así como el acto de impedir la entrada al campus universitario de estudiantes, empleados y profesores, para interrumpir la tarea docente y el funcionamiento normal de las labores universitarias. Es decir, la UPR-RUM solicitó una orden interdictal que incidía sobre el lugar y la manera de expresión de los miembros de la FLEURUM. Por ello, empleó el escrutinio constitucional intermedio - aplicable a un foro limitado por designación o semipúblico - y coligió que, a pesar de que los miembros de la FLEURUM tienen derecho a asociarse y expresarse libremente, las manifestaciones no podían impedir el libre acceso de los estudiantes, profesores y empleados al campus universitario. El TPI puntualizó que ello significaba que la FLEURUM tampoco podía ejercer control sobre las vías de entrada y salida al campus del RUM. Indicó el tribunal que la FLEURUM no podía realizar actos de incautación de las facilidades del RUM mediante obstrucción física al acceso a la propiedad. Ello pues, porque tal actuación, como indicó el foro apelado que quedó demostrado, menoscaba la misión y función pública que tiene el RUM de ofrecer educación, generando daños irreparables e irreversibles, así como pérdidas irrecuperables.

Recapitulando, el TPI ultimó que la prueba desfilada dejó establecido que la UPR-RUM había sufrido un daño irreparable por motivo de la conducta de la FLEURUM de bloquear los accesos al RUM, con la consecuencia de paralizar las labores universitarias, causando un grave daño a la misión educativa y de servicio público de la universidad. Por lo tanto, el foro apelado declaró con lugar la solicitud de *injunction* permanente de la UPR-RUM y ordenó a la FLEURUM y a cada uno de los miembros que la componen a cesar y desistir de llevar a cabo actos que implicaran o conllevaran la obstrucción, impedimento o interferencia al libre tránsito vehicular

o de personas a cualquiera de los predios, instalaciones, edificios o facilidades del RUM. Cónsono con su pronunciamiento, el TPI declaró sin lugar la moción de desestimación contra la prueba (*nonsuit*) presentada por la FLEURUM.

En desacuerdo, el 14 de diciembre de 2023, la FLEURUM interpuso el presente recurso de apelación y apuntó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al no permitir la celebración de una vista y el correspondiente desfile de prueba para determinar si la presente controversia surge de una disputa laboral y por consiguiente actuar de conformidad con el Art. 5 de la Ley Núm. 50 de 4 de agosto de 1947, Ley para Limitar la Jurisdicción de los Tribunales en la expedición de Injunctions en Disputas Obreras.

> Erró el Tribunal de Primera Instancia al declarar Ha Lugar el Injunction, cuando la prueba desfilada y de la apreciación de la misma, la UPR falló en cumplir con los requisitos dispuestos en la Ley Núm. 50 de 4 de agosto de 1947, para que se pueda emitir un injunction, por lo que actuó sin jurisdicción sobre la materia.

La FLEURUM presentó la transcripción de la prueba oral y la UPR-RUM estipuló la misma. Luego, el 29 de mayo de 2024, la FLEURUM presentó su *Alegato Suplementario.* Por su parte, la UPR-RUM presentó su *Alegato de la Parte Apelada* el 27 de junio de 2024.

Con el beneficio de la comparecencia de las partes y la transcripción de la prueba oral, procedemos a resolver.

## II.

### A.

La Regla 57 de Procedimiento Civil[7] y los artículos 675 a 695 del Código de Enjuiciamiento Civil,[8] respectivamente, son las disposiciones de ley que regulan en nuestro ordenamiento el recurso de *injunction.* En ese sentido, el Art. 675 del Código de Enjuiciamiento Civil, define el *injunction* como:

---

[7] 32 LPRA Ap. V, R. 57.
[8] 32 LPRA sec. 3421-3566, Arts. 675-695.

[u]n mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.[9]

A esos efectos, existen tres modalidades de *injunction*, a saber: el entredicho provisional; el *injunction* preliminar; y el *injunction* permanente.[10] El interdicto preliminar o interlocutorio es un remedio provisional que persigue mantener el *status quo* hasta que se celebre el juicio en sus méritos, con el fin de que la conducta del demandado no convierta en académica la sentencia que finalmente se dicte o que se le ocasione al peticionario un daño de mayor consideración mientras se dilucida el litigio.[11]

Al decidir si expide una orden de *injunction* preliminar, el tribunal deberá considerar: (1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o negarse el recurso; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley;[12] (3) la probabilidad de que eventualmente la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el *injunction*; (5) el posible impacto sobre el interés público del remedio que se solicita; y (6) la diligencia y la buena fe con que ha obrado la parte peticionaria.[13]

Los anteriores requisitos no son absolutos, sino directrices que dirigen al tribunal al momento de decidir si la evidencia presentada justifica la expedición del recurso.[14] En específico, la

---

[9] 32 LPRA sec. 3421.

[10] 32 LPRA Ap. V, R. 57.

[11] *Next Step Medical v. Bromedicon et al.,* 190 DPR 474 (2014). *Rullán v. Fas Alzamora*, 166 DPR 742, 764 (2006); *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994); *Cobos Liccia v. DeJean Parking Co., Inc.*, 124 DPR 896, 902 (1989).

[12] Es menester destacar, que el concepto del "daño irreparable" en el contexto del *injunction*, se refiere a "aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles", o "aquél que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito." *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 681 (1998).

[13] 32 LPRA Ap. V, Regla 57.3; *Next Step Medical v. Bromedicon et al.,* supra, pág. 487.

[14] *Next Step Medical v. Bromedicon et al.,* supra, pág. 487.

concesión del remedio descansará en la sana discreción judicial, que se ejercerá al tomar en cuenta tanto los intereses como las necesidades de las partes envueltas en el caso.[15]

Con este preceder, pero en cuanto al interdicto o *injunction* permanente, luego del juicio en sus méritos y antes de ordenar un *injunction* permanente, el tribunal debe considerar nuevamente, la existencia o ausencia de algún otro remedio en ley.[16] Es decir, el *injunction* permanente requiere la celebración de vista y que, luego del juicio en sus méritos y antes de ordenar el *injunction* permanente, el TPI debe considerar: (i) si el demandante ha prevalecido en un juicio en sus méritos; (ii) si el demandante posee algún remedio adecuado en ley; (iii) el interés público involucrado; y, (iv) el balance de equidades.[17]

Por último, la concesión de una orden de *injunction* permanente, *injunction* preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión del mismo concediendo o denegando la orden no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional.[18]

Ahora bien, la Regla 57 de Procedimiento Civil, "no modifica en forma alguna las secs. 101 a 107 del Título 29 [Ley Núm. 50 de 4 de agosto de 1947], que se refiere a la expedición de órdenes de entredicho e *injunctions* en casos que incluyan o surjan de una disputa obrera".[19]

**B.**

---

[15] *Íd.*

[16] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008), citando *Universidad del Turabo v. L.A.I.*, 126 DPR 497 (1990).

[17] *Íd.*; David Rivé, *Recursos Extraordinarios*, 2da Edición Revisada, Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, PR, págs. 44-45.

[18] *E.L.A. v. Asoc de Auditores*, 147 DPR 669, 680 (1999).

[19] Regla 57.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.6.

La *Ley para Limitar la Jurisdicción de los Tribunales en la Expedición de Injunctions en Disputas Obreras*, Ley Núm. 50 de 4 de agosto de 1947, según enmendada.[20] (en adelante, Ley Núm. 50), prohíbe a los tribunales expedir órdenes de entredicho o de *injunction* en casos de huelgas o disputas obrero-patronales. Solamente se permite a los tribunales expedir dichas órdenes en tales conflictos cuando se dan los requisitos de violencia inminente y prevención de actos criminales y en donde la policía certifica que no puede brindar una protección adecuada a la propiedad del solicitante, o cuando existe una grave emergencia por motivo de la cual están claramente en peligro la salud o la seguridad pública.[21] De conformidad con la propia Ley Núm. 50, "[e]l término "disputa obrera" incluye cualquier controversia relativa al término o condiciones de empleo o relativa a la asociación o representación de personas al negociar, fijar, mantener, cambiar, o tratar de llegar a un acuerdo sobre términos o condiciones de empleo".[22]

Acorde con lo anterior, el estatuto especifica el tribunal podrá expedir un *injunction* preliminar o permanente a su amparo, únicamente "[d]espués de **oír el testimonio de testigos** en corte abierta (con oportunidad de contrainterrogatorio) **en apoyo de las alegaciones de una demanda hecha bajo juramento**, y testimonio en oposición a la misma si se ofreciere". (Énfasis nuestro).[23]

**C.**

No obstante, un tribunal tiene facultad para expedir órdenes de *injunction* con el propósito de remover estorbos. El Art. 277 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2761, conocida como ley de estorbo público, provee:

> Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de

---

[20] 29 LPRA sec. 101 *et seq.*
[21] 29 LPRA sec. 102; *P.R.T.C. v. Unión Indep. Emp. Telefónicos,* 131 DPR 171, 192 (1992).
[22] 29 LPRA sec. 109.
[23] 29 LPRA sec. 105, inciso (a).

la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, o que estorbare el bienestar de todo un vecindario, o un gran número de personas, o que ilegalmente obstruyere el libre tránsito, en la forma acostumbrada, por cualquier lago, río, bahía, corriente, canal o cuenca navegable, o por cualquier parque, plaza, calle, carretera pública y otras análogas, constituye un estorbo público que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona, agencia pública o municipio cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicho estorbo público; y la sentencia podrá ordenar que cese aquella, así como decretar el resarcimiento de los perjuicios; lo aquí provisto no podrá aplicarse a las actividades relacionadas con el culto público practicado por las diferentes religiones. […].

Dicha causa de acción tiene un propósito dual: el cese del estorbo mediante el *injunction* y la reparación de los daños ocasionados por el estorbo. Cualquier persona cuyos bienes se hubiesen visto perjudicados o cuyo bienestar personal resulte menoscabado por el estorbo puede promover esta causa de acción. Se trata de salvaguardar el derecho de propiedad, la seguridad y la salud de los ciudadanos. Derechos tan fundamentales que sólo deben ser interferidos por una razón mayor de estado, y, aun en estos casos, debe observarse el debido procedimiento de ley.[24] De modo que, todo el que sufre una perturbación en su propiedad tiene, al amparo del Art. 277, *supra,* a su disposición una acción para obtener un *injunction* con el propósito dual de cesar o aminorar de forma permanente la perturbación producida por los malos olores, ruidos o problemas similares, y resarcir los daños ocasionados por el mismo.[25]

**D.**

El Tribunal Supremo de Puerto Rico ha reconocido que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la

---

[24] *Ortega Cabrera v. Tribunal Superior*, 101 DPR 612, 617 (1973). Es por eso que nuestro más alto foro ha reconocido la facultad de los tribunales para dictar autos de *injunction* contra el Estado o sus instrumentalidades con el propósito de remover estorbos. *Íd.*
[25] *Merher v. Benero Natal*, 119 DPR 508, 510 (1987).

prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz".[26]

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical.[27] Sin embargo, recientemente nuestro más Alto Foro reiteró en *Peña Rivera v. Pacheco Caraballo*[28], que dicha normativa cede si se demuestra que, el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto.[29]

Como es sabido, es doctrina reiterada por el Tribunal Supremo de Puerto Rico que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble.[30] A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa.[31]

Cónsono con lo anterior y ya más en lo relacionado a lo que constituye el error manifiesto, el Tribunal Supremo ha establecido que se configura cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones a las que llegó el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. En otras palabras, cuando

---

[26] *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

[27] *Pueblo v. Hernández Doble*, 210 DPR 850, 864-865 (2022); *Dávila Nieves v. Meléndez Marín*, supra, a la pág. 771.

[28] *Peña Rivera v. Pacheco Caraballo*, 213 DPR ___ (2024); 2024 TSPR 48, opinión del 13 de mayo de 2024.

[29] Véase, además, *Ortiz Ortiz v. Medtronic*, supra.

[30] *Pueblo v. Arlequín Vélez*, 204 DPR 117, 148 (2020).

[31] *Pueblo v. Cabán Torres*, 117 DPR 645, 654 (1986).

la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble.[32]

Por último, la Regla 110 (a) de Evidencia, dispone que "el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes".[33] A su vez, en los casos civiles, la Regla 110(f) de Evidencia, establece que "la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario".[34]

**III.**

La FLEURUM arguye que incidió el foro primario al no celebrar una vista para dilucidar si existía una disputa obrero patronal entre las partes conforme a la Ley Núm. 50, *supra,* y, por tanto, si el foro judicial podía asumir jurisdicción para expedir la orden de *injunction* del presente caso. Plantea que al presente caso le aplican las disposiciones de la Ley Núm. 50, *supra,* que limita la facultad de los tribunales para expedir órdenes de *injunction* en controversias que emanan de una disputa obrero patronal. Arguye que la determinación de si la controversia está enmarcada dentro de una disputa laboral es una cuestión de hechos y no un asunto que se establece con un mero examen de las alegaciones. Aduce que la prueba desfilada demostró que la motivación de las manifestaciones versa sobre reclamos salariales y condiciones de trabajo. No tiene razón.

Del expediente de autos surge, que la UPR-RUM presentó contra la FLEURUM una acción interdictal al amparo del Art. 277 del Código de Enjuiciamiento Civil, *supra,* conocida como ley de

---

[32] *Peña Rivera v. Pacheco Caraballo*, supra, págs. 17-18. Citando a *Ortiz Ortiz v. Medtronic, supra,* pág. 779; *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018); *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).
[33] 32 LPRA Ap. VI, R. 110(a).
[34] 32 LPRA Ap. VI, R.110(f).

estorbo público, para que la colectividad cesara y desistiera de obstruir el libre acceso al campus del recinto universitario. En su demanda, la UPR-RUM solicitó que se declarara estorbo público todo aquel objeto que obstruyera la entrada y salida al recinto, así como el cese y desista de las actuaciones del FLEURUM de bloquear los portones y paralizar las funciones administrativas y académicas del RUM.

Nótese, que la demanda únicamente se limita a exigir el libre acceso a los predios del RUM. Las alegaciones de la demanda presentada por la UPR-RUM ni siquiera aluden o mencionan conflicto obrero patronal alguno existente entre las partes, ni estaba dirigida a interferir, restringir o coaccionar al FLEURUM en su derecho a organizarse y a realizar actividades concertadas o negociar sus condiciones de empleo. Tampoco se solicitó que se obligara a los miembros del FLEURUM a retornar a sus labores. Esto es, la solicitud de cese al bloqueo de los accesos del RUM nada tiene que ver con los motivos que pueda tener el FLEURUM para realizar la manifestación.

Al mismo tiempo, de los autos no consta que la FLEURUM instara vía reconvención alegaciones contra la UPR-RUM fundadas en la Ley Núm. 50, *supra*. Por tanto, cualquier referencia a la aplicación de la Ley Núm. 50. *supra,* solamente representó una defensa planteada por la FLEURUM para que no se concediera el *injunction* solicitado por la UPR-RUM. Toda vez que la FLEURUM nunca reconvino, no podía convertir sus defensas en alegaciones de reconvención. Menos aún era posible que enmendara por la prueba alegaciones que nunca formuló y que la UPR-RUM tampoco tuvo oportunidad de contestar.

Así que, ante el hecho de que la controversia no requería adjudicar asuntos relativos a una disputa obrera, el foro judicial podía asumir jurisdicción en la solicitud de *injunction* incoada por

la UPR-RUM y pasar juicio sobre si las actuaciones imputadas al FLEURUM constituían un estorbo público por el cual el recinto universitario se vio perjudicado.

Así pues, el Sr. José Martín Caraballo Castillo relató la forma y manera en que, el 14 de agosto de 2023, los accesos al RUM estuvieron bloqueados por miembros identificados de la FLEURUM y con aquellos que dialogó para intentar que éstos permitieran la entrada de empleados y estudiantes al campus universitario.[35] El testigo especificó que en el protón principal de La Vita había un grupo de manifestantes y allí se entrevistó con el Sr. Luis Padín (empleado de mantenimiento), quien le indicó que "por instrucciones del señor Daniel Echevarría nadie iba a entrar porque ellos estaban en paro".[36] El Sr. Caraballo Castillo narró que observó que los manifestantes le estaban diciendo a los estudiantes que no podían entrar y que los vehículos tampoco podían entrar porque los portones estaban bloqueados. También observó que los portones de afuera (C y D, que tiene Biología y el Complejo de Ingeniería) también estaban bloqueados por manifestantes.[37] Puntualizó que, a consecuencia de la manifestación, en el RUM se afectaron los trabajos administrativos y académicos.[38] Añadió que manifestantes del FLEURUM también habían bloqueado e impedido el acceso al recinto universitario los días 2 y 10 de agosto de 2023.[39]

A su vez, el Presidente de la UPR, Dr. Luis A. Ferrao Delgado, declaró que el bloqueo de los portones de acceso al RUM interrumpió las labores administrativas y académicas del recinto.[40]

---

[35] Transcripción de la vista de 29 de agosto de 2023, págs. 17-22.
[36] *Íd.,* págs. 22-23.
[37] *Íd.,* pág. 23.
[38] *Íd.,* pág. 45.
[39] *Íd.,* pág. 46, 50-51, 53-55.
[40] Transcripción de la vista de 26 de septiembre de 2023, págs. 55-56.

En otro extremo, el presidente de la FLEURUM, el Sr. Daniel Echevarría Morales, negó que los miembros de esa colectividad hubieran bloqueado el acceso al campus del RUM.[41]

El TPI concedió credibilidad a la prueba presentada por la UPR-RUM en cuanto a que la FLEURUM impidió el acceso al interior del RUM, afectando las labores administrativas y académicas en el recinto. Las determinaciones de hechos encuentran apoyo en los testimonios que fueron vertidos en el juicio y a los que la sala sentenciadora concedió credibilidad. En su dictamen, el TPI indicó a qué testigo le confirió credibilidad y a cuál no, y por qué. Basado en ello, consignó los hechos probados y adjudicó el pleito.

Luego de examinar la totalidad del expediente, concurrimos con el tribunal sentenciador en su conclusión de que la UPR-RUM pudo probar que las manifestaciones que estaban llevándose a cabo por la FLEURUM en el campus del RUM constituyen un estorbo público por el cual se vieron afectados los trabajos administrativos y académicos de la institución. Ello constituyó una perturbación al disfrute de la propiedad accionable bajo el Artículo 277, *supra.* A tenor con todo lo anteriormente esbozado, concluimos que no incidió el TPI, ni se excedió en el ejercicio de su discreción, al declarar con lugar la petición de *injunction* incoada por la UPR-RUM.

Resulta menester destacar que el *injunction* permanente emitido por el tribunal no restringe el derecho de expresión de los miembros de la FLEURUM, sino que solo prohíbe el acto de impedir la entrada al campus universitario e interrumpir las labores académicas y administrativas. Es decir, acorde con la norma aplicable a los foros semipúblicos por designación, el *injunction* solamente incide sobre el tiempo, el lugar y la manera de expresión.[42] Ciertamente, la FLEURUM tiene derecho a expresarse

---

[41] *Íd.*, págs. 84-93.
[42] *U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 302 y 304 (2010).

y asociarse libremente. Sin embargo, no pueden impedir u obstaculizar el libre acceso de los estudiantes y profesores del RUM. Además, la Federación no tiene autoridad en ley para tomar el control de las áreas de entrada y salida del recinto.

La FLEURUM no aportó evidencia que contradijera las determinaciones del TPI de manera que nos moviera a sustituir su criterio por el nuestro. Tampoco articuló fundamentos convincentes para sustentar sus alegaciones. Constituye norma reiterada que la adjudicación de credibilidad que realizó el foro de primera instancia merece nuestra deferencia, por ser dicho foro quien tuvo ante sí a los testigos y dirimió el comportamiento de éstos al declarar. Habiendo considerado el TPI las versiones conflictivas y adjudicado cuál testimonio le fue más creíble o razonable, no nos corresponde, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, intervenir en la apreciación de la prueba que éste hizo. Así pues, la FLEURUM no esbozó razones meritorias para que este Tribunal pudiese concluir que el TPI erró al determinar, luego de emitir numerosas determinaciones de hechos al respecto, que procedía expedir el *injunction* al amparo de la ley de estorbo público solicitado por la UPR-RUM.

Ante la falta de indicios que demuestren que el TPI incurrió en algún error manifiesto, prejuicio o parcialidad, no intervendremos con el dictamen apelado. En vista de lo anterior, en el presente caso no encontramos razones para variar las determinaciones y conclusiones emitidas por el TPI. Así pues, concluimos que no se cometieron los errores señalados, razón por la cual procede confirmar el dictamen apelado.

**IV.**

Por los fundamentos que anteceden, se confirma la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones